GLOBE INDEMNITY COMPANY, A CORPORATION, RESPONDENT, v. MIS-
SISSIPPI VALLEY-MERCHANTS STATE TRUST COMPANY, A CORPORA-
TION, AND HATTIE F. KAUFFMAN (DEFENDANTS), HATTIE KAUFF-
MAN, APPELLANT.*—41 S. W. (2d) 962.

St. Louis Court of Appeals.    Opinion filed September 15, 1931.

*Jones, Hocker, Sullivan & Angert* and *W. A. McCaleb* for appel-
lant.

*Jeffries, Simpson & Plummer* for respondent.

SUTTON, C.—This is an action in replevin, for the recovery of seven bonds issued by the Oklahoma Railway Company, each for the sum of $1,000, with interest coupons attached. The trial was had before the court, without a jury, on an agreed statement of facts, and resulted in a judgment for plaintiff for the recovery of the bonds sued for. Defendant Hattie F. Kauffman appeals.

The agreed statements of facts on which the cause was tried, is as follows:

"1. Under the date of the 3rd day of January, 1911, the Oklahoma Railway Company made, issued, executed and sold a series of its bonds, with interest coupons attached, secured by deed of trust of that date upon certain of its properties. A true copy of this deed of trust is hereto attached as a part of this agreed statement of facts; and the terms of the bonds and coupons so issued and sold by the Railway Company are correctly set forth therein.

"2. The defendant, Hattie F. Kauffman, purchased from the Oklahoma Railway Company, through the Mississippi Valley Trust Company, and became the owner of seven of these bonds, with interest coupons attached, in the principal sum of $1,000 each, numbered 2195, 2196, 2197, 2198, 2199, 2201 and 2202. These bonds and coupons (so far as the latter still remain unpaid and attached to the bonds) are the bonds and coupons in controversy in this case.

"Their date is as above set forth, and their terms are correctly set forth in the copy of the deed of trust hereunto attached.

"3. None of these bonds were ever registered as provided by their terms and the terms of the deed of trust.

"4. In December, 1926, the safe in which the bonds were kept by the defendant Hattie F. Kauffman, in Champaign, Illinois, where she then resided and still resides, was burglarized, and the bonds and coupons attached were stolen. They have never been in her possession since that date.

"5. About February 28, 1929, Boettger, Newton & Company, a firm of brokers in Denver, Colorado, purchased the bonds and coupons attached (no overdue coupons being attached) at their office in the usual course of business from a man named Norris, who had been previously introduced to them and vouched for by one of their clients. They paid Norris $4,384.50 for the bonds, which was a fair price, and they had no knowledge or notice that the bonds had ever been stolen or that there was any question as to the title of Norris thereto.

"6. The plaintiff subsequently purchased the bonds and coupons from Boettger, Newton & Company and have their title and rights.

"7. After the purchase of the bonds by plaintiff, it had them forwarded to defendant, Mississippi Valley Merchants State Trust Company, trustee under the mortgage, for registration, and the report of the theft of said bonds having been made to said trustee, it refused to register the bonds in accordance with plaintiff's request or to return them to plaintiff, and also refused to deliver them to claimant, Hattie F. Kauffman.

"8. The Negotiable Instrument Law as enacted in Missouri is in force in all states whose laws are material to be considered in determining the rights of the parties to this case.

"9. The Mississippi Valley Merchants State Trust Company is a mere stakeholder of the bonds and coupons; it being the purpose of this action to determine the ownership and right to possession of the bonds and coupons as between the plaintiff and the defendant, Hattie F. Kauffman, and, therefore, judgment for damages, if any, and costs shall be for or against the plaintiff or the defendant, Hattie F. Kauffman, but not for or against the Mississippi Valley Merchants State Trust Company."

The bonds in controversy are each in the following form:

"Oklahoma Railway Company, a corporation created and existing under the laws of Oklahoma, for value received, promises to pay to the bearer hereof, or, if this bond be registered, to the registered holder hereof, at Mississippi Valley Trust Company, St. Louis, Missouri or, at the option of the holder, at Harris Trust and Savings Bank, Chicago, Illinois, One Thousand Dollars in gold coin of the United States of America, of or equal to the present standard of weight and fineness, on the first day of January, 1941, and to pay interest thereon from the first day of January, 1911, until paid, at the rate of five per cent per annum, payable semi-annually, on the first days of July and January in each year in like gold coin, at said Mississippi Valley Trust Company or, at the option of the holder of coupons, at said Harris Trust and Savings Bank, such interest until the maturity hereof being payable only upon presentation and surrender of the respective interest coupons hereto annexed evidencing such interest.

"All the aforesaid payments upon this bond, both principal and interest, shall be made without deduction for any tax or taxes, charge or charges hereon, or on the debt or interest evidenced hereby which the said Oklahoma Railway Company, its successors or assigns, or anyone acting on behalf of it or them, may be required to pay, deduct or retain therefrom under any present or future laws, said Oklahoma Railway Company hereby covenanting to pay and discharge any and all such tax or taxes, charge or charges.

"This bond is one of a series of twelve thousand bonds of like denomination, tenor and date, numbered consecutively from 1 to 12,000, both inclusive, the payment of the principal and interest

whereof is equally and ratably secured by a deed of trust given by the said Oklahoma Railway Company to the Mississippi Valley Trust Company, of St. Louis, Missouri, as Trustee and bearing even date herewith, which deed of trust has been duly executed, acknowledged and recorded, and to which reference is hereby made for a description of the property rights and franchises thereby mortgaged, the nature and extent of the security thereby created and the terms and conditions upon which said bonds are or may be issued and secured. all with the same effect as if the provisions of said deed of trust were herein set forth.

"If default shall be made in the payment of the interest on this bond or in the performance of any of the covenants and agreements in said deed of trust, contained, on the part of the Railway Company to be performed, then the principal hereof may be declared and become due and payable as provided therein.

"This bond may be redeemed from the holder hereof, at the option of said Oklahoma Railway Company, on January 1, 1921, or any interest payment date thereafter, at par, accrued interest and a premium of five per cent (5%) on the principal hereof, in accordance with the provisions of said deed of trust. This bond is subject to call for payment by the City of Oklahoma City in the year 1932, or at the end of any fifteen year period thereafter in case of purchase by said City of that part of the property embraced in said deed of trust then situated in said City.

"This bond shall, in all respects be deemed a negotiable instrument, the title to which shall pass by delivery unless registered, as provided in the form for registration on the back hereof. The registry of the bond shall not restrain the negotiability of the coupons by delivery merely.

"This bond may be registered by Mississippi Valley Trust Company as to payment of the principal, upon the books of the Oklahoma Railway Company, kept by said Mississippi Valley Trust Company at its office in St. Louis, Missouri, such registration to be also noted hereon. If registered, this bond shall pass only by transfer on said books, noted also on this bond; but it may be discharged from registration by being so transferred to bearer at the option of each owner.

"This bond shall not become valid unless authenticated by the Trustee, its successor or successors, by execution of the trustee's certificate indorsed hereon, but when so authenticated it shall be deemed to be issued and secured by the deed of trust hereinbefore mentioned.

"In Witness Whereof, the Oklahoma Railway Company has caused this bond to be signed in its name by its President or Vice-President and its corporate seal to be hereunto affixed and attested by its

Secretary or Assistant Secretary, and has caused the coupons hereto attached to be executed with the facsimile signature of its Treasurer, all as of the third day of January, A. D., 1911.''

The coupons attached to the bonds are each in the following form:

''Oklahoma Railway Company, will pay to bearer, upon surrender hereof, at Mississippi Valley Trust Company, St. Louis, Missouri, or at the option of the holder at Harris Trust and Savings Bank, Chicago, Illinois, upon the first day of........A. D. 19...., Twenty-five Dollars ($25) in gold coin of the United States of America, being interest then due on First and Refunding Mortgage Five Per Cent. Gold Bonds of said Railway Company No....... all as provided in and subject to the terms of said bond and the deed of trust therein mentioned.''

The deed of trust contains, among other provisions, the following:

''No holder of any bond or coupon hereby secured shall have any right as such holder to institute any suit, action or proceeding in equity or at law, on account of any such bond or coupon, or for the foreclosure of this indenture or for the execution of any trust hereof, or for the appointment of a receiver, or for any other remedy hereunder, or by reason hereof; all rights of action hereunder and on account of the bonds and coupons hereby secured being vested exclusively in the Trustee.''

The negotiability, or not, of the bonds in suit, is the sole question at issue here. It is conceded that if the bonds are negotiable respondent is the owner of them and entitled to recover their possession, and that if they are not negotiable the appellant is the owner and entitled to possession of them. Appellant says the bonds are not negotiable because the deed of trust referred to in the bonds precludes any holder from suing on the bonds. Respondent says that the bonds, on their face, do not make the terms of the bond subject to the provisions of the deed of trust, nor make the provisions of the deed of trust a part of the bonds, but says that the bonds refer to the deed of trust only for a description of the property rights and franchises thereby mortgaged, and the nature and extent of the security thereby created, and that, therefore, the provision of the deed of trust relied on by appellant does not affect the negotiability of the bonds. It will be observed, however, that the reference in the bonds to the provisions of the deed of trust is made not only for a description of the property rights and franchises thereby mortgaged, and the nature and extent of the security thereby created but also for the terms and conditions upon which the bonds are issued and secured, all with the same effect as if the provisions of the deed of trust were set forth in the bonds. It is difficult to imagine how the terms of the bonds could be more effectually made subject to the provision of the deed of trust relied on by appellant, or how such provision could be more effectually made a part of the

bonds, than by the language of the bonds just referred to. The provision says in express terms that no holder of any bond or coupon secured by the deed of trust shall have any right as such holder to institute any suit, action or proceeding in equity or at law, on account of any such bond or coupon, and that all rights of action on account of the bonds and coupons are vested exclusively in the trustee. Surely this provision is one of the terms or conditions under which the bonds are issued, just such a provision as is in express terms called into the bonds with the same effect as if set forth therein.

Moreover, the coupons which are part and parcel of the bonds (St. Louis-Carterville Coal Co. v. Southern Coal & Mining Co., 194 Mo. App. 598, l. c. 603, 186 S. W. 1152) are in express terms made subject to the terms of the deed of trust.

Respondent, in its brief, concedes that where a bond otherwise negotiable is by its terms made expressly subject to the terms of another written contract referred to therein, the same is thereby made non-negotiable, and in support of this cites and quotes Brinsmade v. Johnson, 192 Mo. App. 684, 179 S. W. 967, as follows:

"The authorities seem to rule that if the terms of the mortgage are not called into it through apt reference as by reciting that *it is subject thereto, or other equivalent words,* the bond may not be declared due and thus rendered suable by a mere provision in the mortgage alone to that effect—that is, the bonds are not due for all purposes."

In Reitz v. Pontiac Realty Co. (Mo.), 293 S. W. 382, the bonds under review refer to the deed of trust by which they are secured, and provides that the deed of trust is by such reference made a part of the bonds, and the court held that all the provisions of the deed of trust were thereby incorporated into the obligations of the bond. The deed of trust provides that "no holder or holders of any bond shall have the right to institute any suit, action or proceeding in equity or at law for the foreclosure of the mortgage or for the appointment of a receiver, or any other action, suit or remedy hereunder or hereupon without first giving thirty days notice." It was contended that this language in the deed of trust, having been by the terms of the bonds incorporated into the obligations of the bonds, deprived the holder of the right to sue at common law on the bonds. The court held against this contention, but so held on the obvious ground that the right of the holder to sue at common law on the bonds was not excluded in express terms, or by necessary implication. The court clearly held, however, that if the provision of the deed of trust incorporated into the obligations of the bonds by reference had precluded in express terms, or by necessary implication, the right of the holder to sue on the bonds at common law, such provision would have been effective and controlling. That case is,

we think, decisive of the present case, for in the present case the provision of the deed of trust, incorporated by reference into the obligations of the bonds, in express terms excludes the right of any holder of any bond or coupon secured by the deed of trust, to institute any suit, action or proceeding in equity or at common law, on account of any such bond or coupon, and vests exclusively in the trustee all rights of action on account of such bonds and coupons. It would be difficult to conceive of language more effectual than this to exclude the right of any holder to bring an action at law on these bonds or coupons. The language expressly and emphatically excludes the right of any holder to institute any suit or action of any sort on account of the bonds or coupons. Surely this comprehensive language is broad enough to exclude the right of any holder to bring an action at law on the bonds or coupons.

. Other grounds urged against the negotiability of the bonds need not be considered.

The Commissioner recommends that the judgment of the circuit court be reversed, and the cause remanded to said court, with directions to enter judgment in favor of the defendants.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed, and the cause remanded to that court, with directions to enter judgment in favor of the defendants. *Haid, P. J.*, and *Becker* and *Nipper, JJ.*, concur.